IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | Criminal No. 17-CR-11 LRR |
| ) | |
| vs. ) | DEFENDANT'S BRIEF IN |
| ) | SUPPORT OF HIS SENTENCING |
| FADI YASSINE, ) | MEMORANDUM |
|     Defendant. ) | |

COMES NOW, the Defendant, by and through counsel, and submits the following in advance of sentencing in this matter. The Defendant does not believe there are any factual disputes that the Court needs to resolve at sentencing. The Defendant does not intend to call any witnesses or offer any exhibits. The legal issues for the Court to resolve at sentencing are: (1) the application of USSG § 2K2.1(b)(1)(D); (2) the application of USSG § 2K2.1(b)(6)(A); (3) whether an upward departure is warranted as noted in Paragraph 120 of the presentence report under Application note 13(C) to §2K2.1; (4) whether a downward departure is appropriate under USSG § 5H1.5 comment n. 1(B); (5) whether a downward departure is appropriate under USSG § 5K2.0; (6) the appropriate sentence under 18 U.S.C. §3553.

I.  GUIDELINES CALCULATIONS.

The Defendant does not contest the facts that form the basis for the probation office's Guideline calculations, just the legal conclusions that stem from those facts. As such, the Defendant is not calling any witnesses or offering any exhibits at

1

sentencing. While the Defendant raises two objections to the legal conclusions that form the basis for the probation office's submission that the base offense level is 28, if the Court finds that the Defendant is correct on one of the objections, the remaining objection would have no effect on the because the minimum base offense level would then be 26 pursuant to USSG §2M5.2.

### A. USSG § 2K2.1(b)(1)(C) SHOULD APPLY RATHER THAN 2K2.1(b)(1)(D) BECAUSE THE DEFENDANT SHOULD ONLY BE HELD RESPONSIBLE FOR 25-99 FIREARMS.

The Defendant submits that he should receive a six-level enhancement, rather than an eight-level enhancement under the facts of this case. The Defendant does not dispute that he helped broker the sale of some of the firearms brought over to Lebanon by the Herz's, that he communicated with Bassam Herz about what kinds of firearms would sell well in Lebanon, or that if Bassam Herz had requested him to help broker more firearms in Lebanon, he would have done so. However, as clear from PSR §§ 21 and 26, the Facebook communications show that Bassam Herz was somewhat blowing the Defendant off when he was trying to involve himself in further dealings with the Herz's. As further noted in paragraph 27, there was a split happening between Bassam Herz and Ali Herz that had nothing to do with the Defendant, which helps explain why the Defendant may no longer have been contacted to help facilitate the Lebanon transactions for the future shipments.

Under these somewhat unique facts of this case, the Defendant submits that he should be held responsible for all of the firearms from the first shipment that he helped broker the sales for, but not for the subsequent shipments that he did not

2

broker the sales for the Herz's. As the probation officer correctly notes, the Defendant was not involved with the March 2015 shipment of firearms. (Probation Officer's Response to Objection No. 4). The probation officer also correctly notes, the Defendant successfully brokered the sale of 30 firearms from February of 2014 and sought, unsuccessfully, to participate in the sale of more firearms. (Probation Officer's Response to Objection No. 5). However, the probation officer determined that the communications by the Defendant (the purpose of which are not contested by the Defendant) meant that the Defendant was attempting to participate in further shipments around the time of the August 2014 shipment, therefore he should be held responsible for the 70 firearms in that shipment. *Id.* The Defendant suggests that even though he would have continued to participate had he not been cut out of the transactions, his desire to participate in further transactions if he could get paid do not rise to the level of "unlawfully sought to obtain" possession of the firearms because he did not know until afterwards that the shipment had arrived, or how many firearms were in the August 2014 shipment. Therefore the Defendant submits he should not be responsible for these additional firearms under the Guidelines.

*United States v. Vega*, 720 F.3d 2002 (8th Cir. 2013) does stand for the proposition that a defendant is responsible for all of the firearms stolen during the burglary of firearms where he was the lookout, despite not personally possessing each of the firearms. Similarly, Mr. Yassine should properly be accountable for the 30 firearms he helped broker, even though he did not personally possess all of those

3

firearms. *Vega* does not stand for the proposition that subsequent criminal activity by members of the conspiracy who have eliminated the defendant from the conspiracy should still cause the defendant to receive enhancements for firearms that he not only did not possess, but did not broker the sales of the firearms.

Instead, this case is more akin to *United States v. Willett*, where the Eighth Circuit rejected a similar argument that a defendant is liable for all of the reasonably foreseeable future actions of prior coconspirators. As the Circuit explained,

> When a defendant is convicted under 18 U.S.C. § 922(j), the base offense level is determined by USSG § 2K2.1(a). A four-level specific offense characteristic also applies "[i]f *the defendant* engaged in the trafficking of firearms." USSG § 2K2.1(b)(5) (emphasis added).[2] The commentary to § 2K2.1 provides that "[t]he term 'defendant,' consistent with § 1B1.3 (Relevant Conduct), *limits the accountability \*549 of the defendant* to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused." USSG § 2K2.1, comment. (n.13(B)) (emphasis added).
>
> This limitation means that the defendant is accountable only for conduct described in USSG § 1B1.3(a)(1)(A), which mirrors application note 13 to USSG § 2K2.1. He is not accountable for reasonably foreseeable acts of others, as described in § 1B1.3(a)(1)(B). Reasonable foreseeability is ordinarily part of the relevant conduct analysis under § 1B1.3, but this approach governs only "unless otherwise specified." USSG § 1B1.3(a). The commentary to § 2K2.1 conspicuously omits any reference to the foreseeability aspect of relevant conduct, and expressly "limits" the defendant's accountability to conduct described in § 1B1.3(a)(1)(A). See *United States v. Delgado-Paz,* 506 F.3d 652, 655-56 (8th Cir.2007) (applying substantially identical commentary from USSG § 5C1.2); *United States v. Pena-Sarabia,* 297 F.3d 983, 987-88 (10th Cir.2002) (same). Reasonable foreseeability is thus immaterial to the analysis. *United States v. Strange,* 102 F.3d 356, 360 (8th Cir.1996).
>
> The district court's determination that Willett was responsible for trafficking in firearms was based on an erroneous interpretation of § 2K2.1(b)(5). The court thought the definitions section of the commentary to § 2K2.1 referred

4

back to "the foreseeability of harm," (S. Tr. 17-18), and the court thus appeared to apply the specific offense characteristic based on what Willett knew or had reason to believe about trafficking by Garr and Vieth. The court did not consider whether Willett engaged in the trafficking of firearms based solely on his *own* conduct, or conduct that *he* aided or abetted, counseled, commanded, induced, procured, or willfully caused.

*United States v. Willett*, 623 F.3d 546, 548-549 (8th Cir. 2010).

For all of these reasons, the Defendant suggests he should be held responsible for 25-99 firearms.

### B. THE ENHANCEMENT UNDER USSG 2K2.1(b)(6)(A) SHOULD NOT APPLY.

*Willett* also supports the Defendant's objection to the application of USSG § 2K2.1(b)(6)(A) because the Defendant did not personally purchase, or possess, firearms in the United States to ship to Lebanon. *Id.* Because the language of the Guideline suggests that this enhancement only applies to individual actions by the Defendant, not what the "offense involves" (see Objection to Paragraph 44). Counsel submits that this language supersedes the language in §1B1.3 due to §1B1.3 stating it only applies "unless otherwise specified." *See Willett*, 623 F.3d at 548049. For these reasons the Defendant submits that because he did not personally cause the shipment of the firearms, nor did he personally possess the firearms in the United States or bring them personally to Lebanon, this enhancement should not apply.

### C. THE DEFENDANT SHOULD NOT GET AN UPWARD DEPARTURE.

The Defendant submits that the upward departure under § 2K2.1 comment (n. 13(C)) should not apply to him. Even if this Court determines that the Defendant should be responsible for the firearms shipped in subsequent shipment

5

should be attributed to him, the fact that he did not further engage in the brokering of the sale of those guns, should mitigate the number of firearms shipped and prevent the application of the upward departure.

> D. THE DEFENDANT SHOULD RECEIVE A DOWNWARD DEPARTURE BECAUSE HIS FAMILY IS RELIANT UPON HIM DUE TO HIS UNIQUE ECONOMIC SITUATION, AND BECAUSE HE WILL NOT BE ABLE TO RECEIVE ANY VISITORS FROM LEBANON FROM HIS IMMEDIATE FAMILY.

The Defendant requests the Court consider a downward departure under USSG §§ 5H1.6 comment n. 1(B) and 5K2.0 because of his unique family and economic situation in Lebanon, and the fact that he will serve his prison sentence without being able to receive visitors from his immediate family. USSG § 5H1.6 comment n.1(B) sets forth when the Court can consider a departure in an unusual case for the loss of caretaking and financial support.

> (B) **Departures Based on Loss of Caretaking or Financial Support.**—A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:
>
> (i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
>
> (ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
>
> (iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the

6

defendant's caretaking or financial support irreplaceable to the defendant's family.

(iv) The departure effectively will address the loss of caretaking or financial support.

The Lebanese economic condition of families is vastly different than those of families in the United States. See, e.g., http://www.theodora.com/wfbcurrent/lebanon/lebanon_economy.html (noting struggles in the economy in Lebanon after the Civil War in 1975-1990. While the Defendant has supported his wife's career goals, selling land and taking out a loan so she could obtain advanced education, it is still more difficult in Lebanon for a woman to support a family without the assistance of a male worker in the home. While Lebanon recognizes more woman's rights that other countries in the region, it is still not on par with the rights of female workers in the United States. *See, e.g.,* https://en.wikipedia.org/wiki/Women_in_Lebanon (noting progress, but not equality, in gender rights). As such, the Defendant's wife and children will struggle more than the average family of a Defendant sentenced by this Court in other cases, rendering a departure under USSG § 5H1.6 comment n.1(B) appropriate in this case.

In addition, the Defendant's wife had her visa cancelled as a result of this offense. As such, it seems unlikely that she will be able to visit, or to bring his children to visit, him in prison in the United States. The Defendant requests the Court consider a departure under section 5K2.0 for this reason.

## II. REASONABLE SENTENCE AND VARIANCE.

The Defendant submits that a reasonable sentence under 18 U.S.C. § 3553 would be a below guideline sentence in this case. While the Defendant acknowledges the seriousness of this offense, mitigating factors exist that support a downward variance from the Guidelines. Specifically, the Defendant has strong family ties with individuals who strongly support him and young children. He supported his wife going to get her advanced degree, and he helps care for his aging mother. He does not speak English and struggles to maintain any sort of communication with other inmates within the jail and prison system and he cannot receive in person visits from any of his immediate family. His incarceration is more difficult than an average defendant as a result.

For all of these reasons, the Defendant requests a below guideline sentence.

Respectfully submitted,

/s/ Angela Campbell
Angela Campbell AT# 0009086
DICKEY & CAMPBELL LAW FIRM, P.L.C.
301 E. Walnut St., Suite 1
Des Moines, Iowa 50309
PHONE: 515.288.5008  FAX: 515.288.5010
E-MAIL:  angela@dickeycampbell.com

CERTIFICATE OF SERVICE
I hereby certify that on July 17, 2017, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties. I also emailed a copy of the document to opposing counsel and the probation office.

/s/ Angela Campbell